UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VADIM BABYREV,

                Plaintiff,

- against -

DR. A. LANOTTE, Psychiatrist at Kirby Forensic Psychiatric Center; SHTA SANZ; SENIOR SHTA OYAKHILOME; DR. MORTIERE, Psychologist at Kirby Forensic Psychiatric Center; SOCIAL WORKER JI LING, at Kirby Forensic Psychiatric Center; and ANN MARIE T. SULLIVAN, Commissioner of Mental Health of the State of New York; each individually and in their official capacities,

                Defendants.

**OPINION AND ORDER**

16 Civ. 5421 (ER)

Ramos, D.J.

*Pro se* plaintiff Vadim Babyrev, a patient at Kirby Forensic Psychiatric Center, brings this action pursuant to 42 U.S.C. § 1983 against defendants Dr. A. Lanotte, Dr. Mortiere, Social Worker Ji Ling, Secure Hospital Treatment Assistant ("SHTA") Sanz, Senior SHTA Oyakhilome, and Commissioner of Mental Health for the State of New York Ann Marie Sullivan, in their official and individual capacities. Doc. 1 at 1. Plaintiff alleges that Defendants violated his constitutional rights under the First and Fourteenth Amendments when his access to pens, telephones, and plastic eating utensils was restricted for several months in 2015. *See Id*. at 3–4. Pending before the Court is Commissioner Sullivan's motion to dismiss Plaintiff's claims against her in their entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 54. For the reasons set forth below, Commissioner Sullivan's motion to dismiss Plaintiff's claims against her is GRANTED in part and DENIED in part.

I. **Factual Background**

The following facts are drawn from allegations contained in the Second Amended Complaint ("SAC") (Doc. 25) and Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp."), which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a *pro se* plaintiff's opposition memoranda are consistent with the allegations contained in the Complaint, they may be read as supplements to the pleadings.") (citation and internal quotation marks omitted).

Plaintiff is a patient at Kirby Forensic Psychiatric Center ("KFPC"), a facility administered by the New York Office of Mental Hygiene ("OMH") that provides secure treatment and evaluation for forensic patients. *See* SAC at 2;[1] Memorandum in Support of Defendant's Motion to Dismiss ("Def.'s Mem.") at 2. All of the defendants in this action, except for Commissioner Sullivan, work at KFPC. *See id.* at 1. Commissioner Sullivan is the Commissioner of Mental Health for the State of New York. *Id.* Plaintiff alleges that in 2015, Dr. Lanotte issued various orders preventing him access to writing and eating utensils and limiting his use of telephones. *See id.* at 3–4. Specifically, Plaintiff claims that Dr. Lanotte issued an order denying Plaintiff access to pens from approximately January 2015 to June 2015, as punishment for Plaintiff's failure to return a pen intended exclusively for temporary use. *Id.* at 3. According to Plaintiff, the pen restriction violated his First and Fourteenth Amendment rights of freedom of speech, access to courts, and due process. *Id.* Plaintiff claims that from January to June 2015, Dr. Lanotte issued a separate order prohibiting Plaintiff from using plastic eating utensils, after Plaintiff threw plastic utensils in the garbage following a meal and refused to

---

[1] Due to Plaintiff's failure to number the paragraphs of the SAC or his other submissions, the Court will refer to the pagination of his filings on the ECF system.

retrieve them when asked. *Id*. Finally, Plaintiff alleges that in March 2015, Dr. Lanotte issued an order limiting his phone calls to one or two "legal" calls per day, after Plaintiff ordered pens and paper over the telephone to be delivered to KFPC. *Id*. The telephone restriction order lasted for five to six months. *Id*.

Plaintiff alleges that shortly after the order restricting his use of pens went into effect, he was strip-searched by Senior SHTA Oyakhilome and SHTA Sanz because they suspected that he had a pen. *Id*. According to Plaintiff, this search violated his Fourth and Fourteenth Amendment rights because "the search was unreasonable since a pen is not on the list of contraband items" in KFPC's Patient Orientation Handbook. *Id*.

## II.   Procedural History

Plaintiff initiated this action against Dr. Lanotte, SHTA Sanz, and Senior SHTA Oyakhilome on July 7, 2016. Doc. 1. With leave from the Court, Plaintiff filed an amended complaint, adding Commissioner Sullivan as a defendant, on November 28, 2016. Doc. 9. Plaintiff subsequently filed his SAC on March 20, 2017, naming Dr. Mortiere and Jing Li as additional defendants. Doc. 25. Dr. Lanotte, SHTA Sanz, and Senior SHTA Oyakhilome filed Answers to the SAC on April 6, 2017. Doc. 30, Doc. 31. Dr. Mortiere and Jing Li filed a joint Answer to the SAC on June 19, 2017. Doc. 45. On August 4, 2017, Commissioner Sullivan moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. She asserts that the Eleventh Amendment bars Plaintiff's claims against her in her official capacity and that the Court should dismiss Plaintiff's § 1983 claims against her in her individual capacity because Plaintiff has failed to sufficiently allege her personal involvement in the conduct at issue. Def.'s Mem. at 1–2.

3

**III.     Legal Standard**

   **A. Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. Fed. R. Civ. P. 12(b)(1). The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *See Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings may be considered by the court to resolve the disputed jurisdictional fact issues. *See Zappia Middle East Construction Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170. When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not necessarily draw inferences from the complaint favorable to the plaintiff. *J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

   **B. Rule 12(b)(6)**

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch*, 699 F.3d at 145. However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at

551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

The same standard applies to motions to dismiss *pro se* complaints. *See Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010). However, the Court is also obligated to construe a *pro se* complaint liberally and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011); *Triestman*, 470 F.3d at 474. The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). A complaint that "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks and brackets omitted); *see also Triestman*, 470 F.3d at 477 ("*[P]ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)) (internal quotation marks omitted).

## IV. Discussion

Plaintiff contends that Commissioner Sullivan is liable for the pen, telephone, and eating utensil restrictions and the strip search—even though she did not directly impose the restrictions or direct or perform the search—because she created and implemented policies that allowed KFPC personnel to violate his constitutional rights, failed to train and supervise KFPC personnel, and failed to issue rules and regulations that were necessary to protect the constitutional rights of patients. *See* SAC at 7; Pl.'s Opp. at 6–7. Plaintiff seeks $100,000.00 in punitive damages and $10,000.00 in compensatory damages from Commissioner Sullivan. He also requests that the Court grant injunctive relief directing Commissioner Sullivan to (1) revise OMH's existing policies regarding the use of pen and paper and its restrictions in forensic psychiatric centers so the policies no longer violate Plaintiff's constitutional rights, (2) revise OMH's policies regarding the use of a phone and its restrictions, the use of plastic eating utensils and its restrictions, and the policies regarding strip searches of patients, so that those policies no longer violate Plaintiff's constitutional rights, (3) provide copies of the rules of OMH facilities to each patient upon admission, and that the rules and respective punishments are clearly noted, and (4) dismiss or demote Dr. Lanotte, Dr. Mortiere and SW Ji Ling. SAC at 11–12.

Commissioner Sullivan contends that the Court should dismiss (1) Plaintiff's official capacity claims against her because she is entitled to Eleventh Amendment immunity, and (2) Plaintiff's individual capacity claims against her because he fails to allege her personal involvement in the constitutional violations he alleges. The Court addresses each argument in turn.

## A. Official Capacity Claims and Eleventh Amendment Immunity

According to Commissioner Sullivan, the Court lacks subject matter jurisdiction over Plaintiff's official capacity claims because they are barred by the Eleventh Amendment. Def.'s Mem. at 5. The Eleventh Amendment precludes suits for monetary damages from proceeding against states or state officials acting in their official capacity, unless the state has waived its sovereign immunity. *Florida Department of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 684 (1982) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)); *accord McMillan v. Monroe County, Alabama*, 520 U.S. 781, 785 n. 2 (1997) ("[A] suit against a governmental officer in his official capacity is the same as a suit against [the] entity of which [the] officer is an agent.") (alterations in original) (citations and internal quotation marks omitted). Section 1983 does not abrogate Eleventh Amendment immunity and New York has not consented to § 1983 suits in federal court. *See Gross v. New York*, 428 F. App'x 52, 53 (2d Cir. 2011) (citing *Trotman v. Palisades Interstate Park Commission*, 557 F.2d 35, 38–39 (2d Cir. 1977)). Damages are thus not recoverable in a § 1983 action against state officials acting in their official capacities. *Davis v. New York*, 316 F.3d 93, 101–02 (2d Cir. 2002).

However, "[u]nder the well-known exception to this rule first set forth in *Ex parte Young*, 209 U.S. 123 (1908) . . . a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." *State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (citation and internal quotation marks omitted). "[I]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Virginia Office for Protection &*

*Advocacy v. Stewart*, 563 U.S. 247, 248 (2011) (quoting *Verizon Maryland Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002)) (second alteration in original).

The SAC does not specify whether he seeks both monetary damages and injunctive relief from Defendants in both their official and individual capacities. *See generally*, Doc. 25. In his response to Commissioner Sullivan's motion to dismiss, however, Plaintiff clarifies that "he is suing all defendants, including Commissioner Sullivan, for money damages in their individual capacity, and for injunctive/prospective relief in their official capacities." Pl.'s Opp. at 11. In light of Plaintiff's clarification, the Court need not address whether claims for monetary damages against Commissioner Sullivan in her official capacity are proper; in any event, such claims would be barred by the Eleventh Amendment.

With respect to Plaintiff's claims for injunctive relief, Commissioner Sullivan contends that Plaintiff fails to satisfy the pleading requirements of *Ex parte Young* because he does not allege that she is involved in an "ongoing" violation of federal law. Def.'s Mem. at 7. According to Commissioner Sullivan, Plaintiff's claims for injunctive relief arise from past acts by the other named defendants—namely, Dr. Lanotte's restrictions on Plaintiff's access to pens, telephones, and eating utensils, and the strip search conducted by Oyakhilome and Sanz. *Id*. at 8.

The SAC does not expressly assert that the constitutional violations he alleges are ongoing. However, with respect to the pen restriction, Plaintiff argues in his opposition papers that even though he currently has access to pens, Commissioner Sullivan is engaged in an ongoing violation of federal law because it is "likely and unavoidable" that he will be subjected to pen restrictions in the future. Pl.'s Opp. at 6–7. Plaintiff appears to be contending, therefore, that *Ex parte Young* does not require that a violation actually be in progress in order to constitute an "ongoing violation." Plaintiff's position takes for granted that the possibility of a future

8

violation suffices to render that violation "ongoing." Plaintiff does not appear to make a similar argument with respect to the other constitutional violations he alleges (i.e., he does not contend that phone and eating utensil restrictions and strip searches are likely to reoccur in the future and are therefore "ongoing violations"). *See* Def.'s Reply at 2.

Neither the Supreme Court nor the Second Circuit has directly addressed whether a violation that is not currently in progress may nevertheless be considered "ongoing" where the possibility of a future violation exists. *Doe v. Annucci*, No. 14 Civ. 2953 (PAE), 2015 WL 4393012, at *15–16 (S.D.N.Y. July 15, 2015), *appeal withdrawn* (May 12, 2016). However, other circuit courts and district courts in this circuit "have held that the challenged action need not literally be 'in progress' to defeat a claim of sovereign immunity; rather, 'where there is a threat of future enforcement that may be remedied by prospective relief, the ongoing and continuous requirement has been satisfied." *Id*. (quoting *Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999)); *see also* Charles Alan Wright et al., 13D Fed. Prac. & Proc. § 3566, at 292 (3d ed. 2008) ("[T]he best explanation of *Ex parte Young* and its progeny is that the Supremacy Clause creates an implied right of action for injunctive relief against state officers who are *threatening* to violate the federal Constitution and laws.") (emphasis added) (quoted in *Burgio & Campofelice, Inc. v. N.Y. State Department of Labor*, 107 F.3d 1000, 1006 (2d Cir. 1997)); *KM Enterprises, Inc. v. McDonald*, No. 11 Civ. 5098 (ADS) (ETB), 2012 WL 4472010, at *10 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 F. App'x 12 (2d Cir. 2013) ("Certainly, the requirement of an ongoing and continuous violation of federal law need not mean that the Commissioner be in the midst of a current misapplication of federal law against the particular plaintiff initiating the suit. Such a decree would essentially render Ex Parte Young a nullity.); *Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316, 330 (4th Cir. 2001) ("The

requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent."); *Vickery v. Jones*, 100 F.3d 1334, 1346 (7th Cir. 1996) ("[T]he *Young* exception permits relief against state officials only when there is an ongoing or *threatened* violation of federal law.") (emphasis added); *Han v. U.S. Department of Justice*, 45 F.3d 333, 338 (9th Cir.1995) (Eleventh Amendment bars suits where "[t]here is no allegation that the state defendants are likely to approve third party agreements in the future or that plaintiffs otherwise face a threat of harm from the state defendants' future actions."). Consistent with this line of out-of-circuit cases and district court cases from this circuit, the Second Circuit has held that "alleged injuries stemming only from past conduct *with no plausible threat of future violations* . . . do not fall within the *Young* exception to Eleventh Amendment immunity." *Clark v. DiNapoli*, 510 F. App'x 49, 51 (2d Cir. 2013) (summary order) (emphasis added).

Moreover, the Supreme Court has observed that *Ex parte Young* distinguishes between cases "in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation." *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986); *see also Green v. Mansour*, 474 U.S. 64, 68 (1985) ("Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.") (citation omitted). In other words, whether a violation is "ongoing" and whether a Plaintiff's requested relief is properly characterized as "prospective" are closely related questions, and the nature of the relief requested can shed light on whether the violation is ongoing. *Annucci*, 2015 WL 4393012, at

*16 (S.D.N.Y. July 15, 2015) (citing *Agent Coal. v. Rowland*, 494 F.3d 71, 96 (2d Cir.2007) ("[I]t is relevant—in considering the existence *vel non* of an ongoing violation—to ask whether the claimed remedy is still available."); *Summit Medical Associates*, 180 F.3d at 1338 ("[T]he ongoing and continuous requirement merely distinguishes between cases where the relief sought is prospective in nature, i.e., designed to prevent injury that will occur in the future, and cases where relief is retrospective.").

Plaintiff contends that future pen restrictions are "likely and unavoidable" because (1) Commissioner Sullivan's policy allowing pen restrictions has never been cancelled, (2) pen restrictions are still frequently implemented at KFPC, (3) Plaintiff's own access to pens has been restricted on more than one occasion, and (4) "the time allowed to patients for using a pen is so limited, they . . . have to 'bend' the rules of pen usage in order to fight their ongoing cases, grieve the conditions of their confinement, [and] file habeas petitions." Pl.'s Opp. at 6–7. While Plaintiff's contention that pen restrictions are "unavoidable" may overstate his case, the Court finds that he has sufficiently alleged a likelihood that he will be subjected to similar violations in the future. *See, e.g.*, *KM Enterprises, Inc.*, 2012 WL 4472010, at *10–11 ("[Plaintiff] must assert a likelihood that it will be subjected to a similar violation in the future.").

Furthermore, Plaintiff's request for injunctive relief directing Commissioner Sullivan to revise OMH policies regarding pen restrictions is squarely directed at preventing future pen restrictions, conduct that Plaintiff alleges amounts to a violation of his constitutional rights. By seeking injunctive relief that is unquestionably prospective, Plaintiff resolves any lingering doubt that he alleges an ongoing violation of federal law with respect to the pen restriction and that this particular claim falls under the *Ex parte Young* exception. Accordingly, Commissioner

Sullivan's motion to dismiss Plaintiff's claim for injunctive relief directing her to revise OMH's "existing policies regarding the use of pen and paper and its restrictions" is DENIED.

However, as stated above, Plaintiff fails to articulate why the telephone and eating utensil restrictions and the strip search conducted by Oyakhilome and Sanz should be considered ongoing violations. Accordingly, Commissioner Sullivan's motion to dismiss Plaintiff's claims for injunctive relief directing her to revise OMH's policies regarding the use of phones and plastic eating utensils, and the policies regarding strip searches is GRANTED.

Furthermore, as Commissioner Sullivan points out, Plaintiff fails to allege that she has the authority to grant the other injunctive relief he seeks, specifically, to provide copies of the rules of OMH facilities to each patient upon admission and to dismiss or demote Dr. Lanotte, Dr. Mortiere and Ji Ling. *See* Pl.'s Opp. at 8–9. In order to survive a motion to dismiss requests for injunctive relief, a plaintiff must allege that the state official has the authority to grant the injunctive relief sought. *See Hall v. Marshall*, 479 F. Supp. 2d 304, 318 (E.D.N.Y. 2007) (holding that plaintiff's claim for injunctive relief could not proceed because plaintiff failed to allege that defendants had the authority to grant the relief sought); *Loren v. Levy*, No. 00 Civ. 7687 (DC), 2003 WL 1702004, at *11 (S.D.N.Y. Mar. 31, 2003), *aff'd*, 120 F. App'x 393 (2d Cir. 2005) (granting summary judgment in favor of defendants in wrongful termination case because record failed to show that defendants had the authority to reinstate Plaintiff). Accordingly, Commissioner Sullivan's motion to dismiss Plaintiff's claim for injunctive relief directing her to provide copies of OMH rules to patients and to demote Dr. Lanotte, Dr. Mortiere, and Ji Ling is GRANTED.

### B. Individual Capacity Claims and Personal Involvement

Commissioner Sullivan contends that Plaintiff's individual capacity claims for compensatory and punitive damages must be dismissed because Plaintiff fails to allege that she was personally involved in the constitutional violations he alleges. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). "Conclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient, and supervisors cannot be held liable based solely on the alleged misconduct of their subordinates." *Kee v. Hasty*, No. 01 Civ. 2123 (KMW) (DF), 2004 WL 807071, at *2 (S.D.N.Y. Apr. 14, 2004) (internal citations omitted). In *Colon*, the Second Circuit established that the personal involvement of a supervisory defendant may be shown by evidence that the defendant (1) participated directly in the alleged violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning about it; (4) was grossly negligent in supervising the officers involved; or (5) exhibited deliberate indifference to the plaintiff's rights by failing to act on information indicating that unconstitutional acts were occurring. 58 F.3d at 873.

More than a decade after *Colon*, the Supreme Court in *Iqbal* held that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. at 676. The limitation on supervisory liability in *Iqbal* has "engendered conflict [within the Second Circuit] about the continuing vitality of the supervisory liability test set forth in *Colon* . . . ." *Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012). The Second

13

Circuit has not yet squarely addressed the impact of *Iqbal* on the standards set forth in *Colon*. *See Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014) ("We have not yet determined the contours of the supervisory liability test, including the gross negligence prong, after *Iqbal*."); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the [defendant's] personal involvement even under *Colon*.").

In the absence of binding Second Circuit precedent, district courts have split into two camps. Some of our sister courts have held that *Iqbal* categorically eliminated the second, fourth, and fifth *Colon* factors. *See, e.g.*, *Bellamy v. Mount Vernon Hospital*, 07 Civ. 1801 (SAS), 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) *aff'd sub nom. Bellamy v. Mount Vernon Hospital*, 387 F. App'x 55 (2d Cir. 2010) ("Only the first and part of the third *Colon* categories pass *Iqbal*'s muster—a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred."). Other courts, however, have held that the viability of the second, fourth, and fifth *Colon* factors depends on the underlying constitutional claim. *See, e.g.*, *Sash v. United States*, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009) ("Where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth and Eighth Amendments, the personal involvement analysis set forth in *Colon v. Coughlin* may still apply."); *Delgado v. Bezio*, 09 Civ. 6899 (LTS), 2011 WL 1842294, at *9 (S.D.N.Y. May 9, 2011) (holding that "where the claim does not require a showing of discriminatory intent, the *Colon* analysis should

14

still apply, insofar as it is consistent with the particular constitutional provision alleged to have been violated") (internal quotation marks omitted). Neither group disputes the continuing viability of the "direct participation" and "policy or custom" factors (i.e., the first *Colon* factor and part of the third *Colon* factor). *Marom v. City of New York*, No. 15 Civ. 2017 (PKC), 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016), *on reconsideration in part*, No. 15 Civ. 2017 (PKC), 2016 WL 5900217 (S.D.N.Y. July 29, 2016).

With respect to the pen and telephone restrictions, Plaintiff seems to argue that Commissioner Sullivan was personally involved in that she created and implemented the policies that allowed Dr. Lanotte to restrict Plaintiff's ability to communicate with persons outside of KFPC. *See* SAC at 7. According to Plaintiff, § 33.05(a) of New York's Mental Hygiene Law ("MHL") explicitly allows the Commissioner of Mental Health to regulate patients' communication with persons outside OMH facilities.[2] In a letter filed with the Court after Commissioner Sullivan replied to his opposition, Plaintiff attempts to further bolster his personal involvement allegations by citing the "exact policy/regulation [issued by Commissioner Sullivan] that allowed Dr. Lanotte to violate [Plaintiff's] constitutional rights," namely § 527.12(a) of the Codes, Rules, and Regulations of the State of New York ("CRR"), which states that:

> A right set forth in article 33 of the Mental Hygiene Law and this Part may be restricted within the resident's treatment plan by a written order signed by a physician stating the clinical justification for the restriction. The order imposing the restriction and a notation detailing the clinical justification therefor and the specific period of time in which the restriction shall be in effect must be entered into the resident's record. In no event may any right set forth in this

---

[2] MHL § 33.05(a) Each patient in a facility shall have the *right to communicate freely and privately with persons outside the facility* as frequently as he wishes, *subject to regulations of the commissioner* designed to assure the safety and welfare of patients and to avoid serious harassment to others. Correspondence addressed to public officials, attorneys, clergymen, and to the mental hygiene legal service shall be unrestricted and shall be sent along promptly without being opened. (emphasis added).

> section be restricted or limited as a punishment or for the convenience of staff.

14 CRR-NY § 527.12. According to Plaintiff, Commissioner Sullivan "gave Dr. Lanotte such broad power/authority to restrict Plaintiff's most basic rights . . . that with a couple of strokes of a pen [Dr. Lanotte] created unbearable/unconstitutional conditions of prison life for the plaintiff." Doc. 74. In other words, Plaintiff contends that Commissioner Sullivan was personally involved in the pen and telephone restrictions because her policies—§ 33.05(a) of the Mental Hygiene Law and § 527.12 of the Codes, Rules, and Regulations of the State of New York—explicitly allowed Dr. Lanotte to impose restrictions that violated Plaintiff's constitutional rights. With respect to the eating utensil restriction and the strip search, Plaintiff alleges that Commissioner Sullivan was personally involved because she failed to (1) supervise and train her subordinates to follow existing law and policy and (2) failed to promulgate rules and regulations to protect the constitutional rights of patients in OMH facilities. Pl.'s Opp. at 3.

At the outset, the Court notes that a defendant's failure to promulgate rules and regulations is not a basis for establishing personal involvement under *Colon*. Moreover, Plaintiff's attempt to rely on the fourth *Colon* factor—gross negligence in the supervision of officers—is unavailing, even if that factor remained fully viable post-*Iqbal*. Plaintiff's conclusory statement that Commissioner Sullivan failed to train and supervise is insufficient, without more, to allege that Commissioner Sullivan's conduct rose to the level of "gross negligence." Thus, even assuming the continuing viability of the fourth *Colon* factor, it cannot serve as a basis for Commissioner Sullivan's personal involvement on the facts alleged here. Accordingly, her motion to dismiss Plaintiff's claims for damages based on her alleged involvement in Dr. Lanotte's eating utensil restriction and the strip search conducted by Oyakhilome and Sanz is GRANTED.

However, assuming the allegations in the SAC to be true, as the Court is constrained to do with respect to a 12(b)(6) motion, Plaintiff has sufficiently alleged Commissioner Sullivan's personal involvement in the pen and telephone restrictions based on the third *Colon* factor (i.e., the creation of a custom or policy that fostered the constitutional violation)—one of the *Colon* factors that courts in this circuit agree survived *Iqbal*. *See Marom*, 2016 WL 916424, at *15. Plaintiff has identified specific regulatory language that allegedly fostered Dr. Lanotte's pen and telephone restrictions: MHL § 33.05(a), which contemplates that the Commissioner may restrict patients' communication with persons outside OMH facilities, and CRR § 527.12(a), explicitly giving OMH personnel license to impose such restrictions. The creation and implementation of regulations specifically contemplating and allowing the conduct of which Plaintiff complains is the equivalent of fostering that conduct, as the third *Colon* factor requires. Whether MHL § 33.05(a) and CRR § 527.12(a) actually amount to constitutional violations is not at issue at this juncture; Commissioner Sullivan only contends that Plaintiff's claims should be dismissed for failure to allege personal involvement.[3] Because Plaintiff has sufficiently pleaded Commissioner Sullivan's personal involvement, Commissioner Sullivan's motion to dismiss Plaintiff's individual capacity claims against her based on Dr. Lanotte's pen and telephone restrictions is DENIED.

## V.     Leave to Amend

The Second Circuit has instructed Courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a

---

[3] Commissioner Sullivan contends that Plaintiff cannot rely on CRR § 527.12(a) to allege her personal involvement because that regulation prohibits restricting patients' rights as a form of punishment and Plaintiff alleges that Dr. Lanotte imposed the communication restrictions as punishment. Doc. 78. Thus, Commissioner Sullivan argues, she cannot be held personally liable because Dr. Lanotte violated that prohibition. *Id*. Her argument is unavailing because the crux of Plaintiff's claim is that Dr. Lanotte violated his constitutional rights by restricting his access to pens and telephones, regardless of whether he did so as a form of punishment.

valid claim might be stated." *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)) (internal quotation marks omitted). Here, while the Court has already granted Plaintiff the opportunity to amend his original Complaint, it was not in the context of a motion to dismiss and the Court has therefore not provided guidance as to how his claims may be adequately made. In *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities*, LLC, 797 F.3d 160 (2d Cir. 2015), the Second Circuit reaffirmed that the "liberal spirit" of the Federal Rule of Civil Procedure 15 embodies a "strong preference for resolving disputes on the merits." *See id*. at 190–91 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011)). *Loreley* thus counsels strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. *Id*. at 190-91.

As it is not apparent that any further opportunity to amend would be futile, the Court dismisses *without prejudice* Plaintiff's (1) official capacity claim for injunctive relief directing Commissioner Sullivan to revise OMH's policies "regarding the use of a phone and its restrictions, the use of plasticware/eating utensils and its restriction, and the policies regarding strip searches of patients"; (2) official capacity claim for injunctive relief directing Commissioner Sullivan to provide copies of OMH rules to patients and to demote Dr. Lanotte, Dr. Mortiere, and Ji Ling; and (3) individual capacity claims against Commissioner Sullivan based on her alleged involvement in Dr. Lanotte's eating utensil restriction and the strip search conducted by Oyakhilome and Sanz.

## VI. Conclusion

For the reasons set forth above, Commissioner Sullivan's motion to dismiss is GRANTED in part and DENIED in part. Specifically:

- Plaintiff's claim for injunctive relief directing Commissioner Sullivan to revise OMH's policies "regarding the use of a phone and its restrictions, the use of plasticware/eating utensils and its restriction, and the policies regarding strip searches of patients" is dismissed without prejudice.

- Plaintiff's claim for injunctive relief directing Commissioner Sullivan to provide copies of OMH rules to patients and to demote Dr. Lanotte, Dr. Mortiere, and Ji Ling is dismissed without prejudice.

- Plaintiff's claims for compensatory and punitive damages based on Commissioner Sullivan's role in Dr. Lanotte's eating utensil restriction and the strip search conducted by Oyakhilome and Sanz are dismissed without prejudice.

- The motion to dismiss Plaintiff's claim for injunctive relief directing Commissioner Sullivan to revise OMH's "existing policies regarding the use of pen and paper and its restrictions" is denied.

- The motion to dismiss Plaintiff's claims for compensatory and punitive damages based on Commissioner Sullivan's role in Dr. Lanotte's pen and telephone restrictions is denied.

Plaintiff may file a Third Amended Complaint by **February 5, 2018**. Otherwise, the matter will go forward only with respect to Plaintiff's remaining claims for injunctive relief and damages.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 54, and to mail a copy of this Opinion and Order to Plaintiff.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). It is SO ORDERED.

Dated: January 11, 2018
      New York, New York

                                                        Edgardo Ramos, U.S.D.J.